


BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| In re: HYUNDAI AND KIA VEHICLE EPA FUEL ECONOMY RATING LITIGATION | MDL Docket No. |
|---|---|

JUDGE CASTILLO
MAGISTRATE JUDGE KEYS

**_BRADY_ PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS IN THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION, UNDER 28 U.S.C. § 1407**

## TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Factual Background ..... 3

B. Procedural History of the Pending Actions ..... 4

III. ARGUMENT ..... 6

A. Transferring the Pending Actions for Coordinated Pretrial Proceedings is Proper ..... 6

1. The related actions involve common questions of fact. ..... 7

2. Consolidating the actions furthers the convenience of parties and witnesses. ..... 8

3. Transfer and consolidation will promote just and efficient conduct of the related actions. ..... 9

B. The Related Actions Should Be Transferred to the Central District of California for Coordinated or Consolidated Pretrial Proceedings before Honorable Judge Selna or to Judge Guilford ..... 10

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1358, 1359 (J.P.M.L. 2009) ... 11

*In re Air Crash Disaster Near Coolidge, Arizona*, 362 F. Supp. 572, 573 (J.P.M.L. 1973) ... 11

*In re Cutter Labs, Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F. Supp. 1295, 1296 (J.P.M.L. 1979) ... 6

*In re Ephedra Prod. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ... 8, 10

*In re European Rail Pass Antitrust Litig.*, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001) ... 10

*In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ... 11

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 598 F. Supp. 2d 1384, 1386 (J.P.M.L. 2009) ... 11

*In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) ... 11

*In re Neurontin Mktg & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004) ... 8, 10

*In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004) ... 7

*In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1974) ... 10

*In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969) ... 9

*In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002) ... 9

*In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973) ... 11

## STATUTES

28 U.S.C. § 1407 ........ *passim*

## OTHER AUTHORITIES

MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004) ........ 10

MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004) ........ 6

The *Brady* Plaintiffs[1] respectfully submit this Memorandum in Support of their motion for transfer and consolidation of related actions in the Central District of California, Southern Division, under 28 U.S.C. § 1407.

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407, the *Brady* Plaintiffs seek an Order (i) transferring to the Central District of California the *Hunter, Sanders, Wilton, Krauth, Maturani, Kievit, Graewingholt, Thomson, Rezai,* and *Rottner* cases and any other tag-along actions filed in or removed to the federal courts asserting similar or related claims against Hyundai Motor Co., Hyundai Motor America, Kia Motors Corporation, or Kia Motors America, Inc. (collectively, "Defendants"),[2] regarding the Defendants' use of overstated fuel economy ratings, which affected the marketing and sale of *at least* 900,000 vehicles; and (ii) consolidating the *Hunter,*[3] *Wilton,*[4] *Krauth*[5], *Graewingholt*[6], *Thompson*[7], *Rottner*[8], *Rezai*[9], *Sanders*[10], *Kievit*[11], and

[1] "Plaintiffs" or the "*Brady* Plaintiffs" are Kaylene P. Brady, Travis Brissey, Colnett Brubaker, Ronald J. Burkard, Adam Cloutier, Steven Craig, John J. Dixson, Erin L. Fanthorpe, Eric Hadesh, Michael P. Keeth, John Kirk Macdonald, Michael Mandahl, Nicholas McDaniel, Mary J. Moran-Spicuzza, Steve B. Perry, Gary Pincas, Brandon Potter, Thomas Purdy, Rocco Renghini, Michelle Singleton, Ken Smiley, Gregory M. Sonstein, Roman Starno, Gayle A. Stephenson, Andres Villicana, and Richard Williams. Their case is captioned *Brady v. Hyundai Motor America*, United States District Court for the Central District of California, Case No. SA-CV12-1930-AG(MLGx).

[2] The Defendants are each units of the large South Korean conglomerate, Hyundai Group, and share many engines, parts, research, factories, and vehicle testing facilities.

[3] *Hunter v. Hyundai Motor America*, Case No. 8:12-cv-01909 (C.D. Cal.).

[4] *Wilton v. Kia Motors America, Inc*., Case No. 8:12-cv-01917 (C.D. Cal.).

[5] *Krauth v. Hyundai Motor America*., Case No. 8:12-cv-01935 (C.D. Cal.)

[6] *Graewingholt v. Hyundai Motor America,* Case No. 8:12-cv-01963 (C.D. Cal.).

[7] *Thomson, et al. v. Hyundai Motor America, et al*., Case No. 8:12-cv-01981 (C.D. Cal.).

[8] *Rottner v. Hyundai Motor America,* Case No. 1:12-cv-09196 (N.D. Ill.).

[9] *Rezai v. Hyundai Motor America,* Case No. 1:12-cv-09124 (N.D. Ill.).

[10] *Sanders v. Hyundai Motor Co.*, Case No. 1:12-cv-00853 (S.D. Ohio).

*Maturani*[12] class actions before Judge James V. Selna for pretrial discovery and class certification purposes. Transfer and consolidation in the Central District of California, Southern Division, is necessary under Section 1407 in order to promote efficient management of the litigation because:

- The actions involve nearly identical factual allegations regarding Defendants' fuel economy testing and subsequent inaccurate representations of false gas mileage estimates and fuel economy ratings information for certain model and model year vehicles (the "Subject Vehicles"), and the actions bring largely duplicative legal claims. Thus, discovery in all of the related actions will necessarily focus on the same documents, witnesses and other evidence pertaining to Defendants' testing and marketing of the Subject Vehicles, and Defendants' knowledge of any problems relating to the testing of the Subject Vehicles' fuel economy ratings and discrepancies with regard to the Subject Vehicles' actual EPA fuel economy ratings. Absent consolidation, duplicative discovery and potentially conflicting dispositive legal rulings may result.
- The actions involve overlapping putative classes. Although the language used to define the proposed classes vary in minor and inconsequential respects, the *Sanders, Wilton, Hunter,* and *Graewingholt* actions all seek to certify nationwide (or international) classes of owners and lessees of Subject Vehicles. Absent consolidation, multiple federal district courts could issue multiple conflicting class certification rulings.

---

[11] *Kievit, et al. v. Hyundai Motor America*, Case No. 2:12-cv-06999 (D.N.J.).

[12] *Maturani v. Hyundai Motor America, Inc.*, Case No. 2:12-cv-00998 (M.D. Ala.).

- The Panel favors transfer of related actions to the district in which the broader-based, earliest and most procedurally advanced action is pending. Although all of the actions are in their infancy, the *Hunter* action pending before Judge Selna was the first action filed,[13] and arguably contains the broadest class definition, allegations, and claims. Additionally, two of the eleven suits are already pending before Judge Selna. Notably, the Central District of California is the preferred forum of the Plaintiffs who have filed actions thus far.[14]
- Moreover, Defendants Hyundai Motor America and Kia Motors America, Inc. are both headquartered in the Central District of California, which is where most of the relevant witnesses, documents, and other are evidence can be found.

## II. BACKGROUND

### A. Factual Background

Federal law provides generally that every new vehicle sold in the United States must have a window sticker (also known as a Monroney sticker) affixed to the window or windshield. The window sticker must contain certain essential information about the vehicle, including its manufacturer's suggested retail price, its engine and transmission specifications, its standard and optional equipment, warranty information, crash test ratings, and fuel economy ratings. The

[13] The *Hunter* action was filed on November 2, 2012, the very day that Defendants issued press releases acknowledging that the government investigation had uncovered widespread problems with Defendants fuel economy testing procedures and resulting fuel economy ratings. The *Sanders* and *Wilton* actions were filed on November 4 and November 5, respectively. The *Brady* and *Krauth* actions were filed on November 6. The *Maturani, Kievit* and *Graewingholt* actions were filed on November 9. The *Thomson, Rezai,* and *Rottner* actions were filed on November 13, November 14 , and November 15, respectively.

[14] Moreover, under the Central District's General Order No. 98-04, all pending civil cases which fall within the related case transfer criteria will be assigned to the judge to whom the first filed case bearing the lowest case number was assigned. Here, the *Hunter* case was filed first and assigned to Judge Selna.

Environmental Protection Agency ("EPA") has identified certain standard testing procedures that must be used to determine a given vehicle's fuel economy rating, which must then be displayed on the vehicle's mandatory window sticker. These tests measure various aspects of the vehicle's design, including aerodynamics and road resistance.

With fuel costs rising to unprecedented levels, fuel mileage has become one of the most important considerations for new vehicle shoppers because even a small improvement in miles per gallon performance can add up to large savings over the life of a vehicle. Accordingly, consumers rely on the fuel economy ratings contained on vehicle window stickers and featured in manufacturers' websites, brochures, and advertisements to help them make informed choices about the vehicles they purchase. Well aware of the importance of fuel mileage to the public, Defendants widely promote the fuel economy of their vehicles in brochures, advertisements, and on their internet websites.

On November 2, 2012, the EPA announced the results of an investigation into the alleged inflated fuel economy ratings of certain 2011-2013 model vehicles manufactured by the Defendants. The EPA found fuel economy rating discrepancies ranging from one to six miles per gallon for seven Hyundai brand and six Kia brand models. The affected vehicles account for roughly one-third of the cars sold by Defendants during those years – or approximately 900,000 vehicles – and the EPA's testing found that the Defendants' fleet average of all models combined is actually 3% worse than what Defendants had represented.

**B. Procedural History of the Pending Actions**

On November 2, 2012 – the same day that the EPA released its investigation results to the public – plaintiffs Nicole Marie Hunter, E. Brandon Bowron, and Giuseppina Roberto ("*Hunter* Plaintiffs") filed a proposed class action on behalf of a nation-wide class of persons "who currently own or lease a Hyundai or Kia automobile whose EPA fuel economy ratings

were less than the fuel economy rating produced by the applicable federal test." *See Hunter* Class Action Complaint, ¶ 54. The *Hunter* Plaintiffs assert claims for (1) violation of the California Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*), (2) violation of the California False Advertising Law (CAL. BUS. & PROF. CODE § 17500, *et seq.*), (3) violation of the California Consumer Legal Remedies Act (CAL. CIV. CODE § 1750, *et seq.*), (4) breach of express warranty, (5) fraud, (6) negligent misrepresentation, and (7) unjust enrichment/restitution. *Id.* at ¶¶ 63-108.

The *Sanders* Plaintiffs filed a second action in the Southern District of Ohio two days later on November 4, 2012. *See generally Sanders* Class Action Complaint with Jury Demand. The Sanders complaint seeks to certify a similar nation-wide class and state-specific sub-classes for Ohio residents, and asserts claims of (1) breach of contract, (2) breach of express warranty, and (3) violation of the Ohio Consumer Sales Practices Act (O.R.C. § 1345.02, *et seq.*)

Plaintiff Jeremy Wilton filed a third putative class action in the Central District of California, Southern Division, on November 5, 2012. His complaint seeks to certify an international class of American and Canadian purchasers and lessees,[15] and asserts claims largely duplicative of those asserted by the *Hunter* Plaintiffs: (1) violation of the California Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*), (2) violation of the California False Advertising Law (CAL. BUS. & PROF. CODE § 17500, *et seq.*), (3) breach of express and implied warranty, and (4) violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*). *See generally Wilton* Complaint for Damages and Equitable Relief.

---

[15] Notably, unlike the class definitions set forth in the *Sanders* and *Hunter* complaints, the class defined in the *Wilton* complaint is expressly limited to owners and lessees of the 2011-2013 vehicles specifically identified in the EPA report. Thus, the class definitions outlined in the *Sanders* and *Hunter* complaints are broader, encompassing all vehicles that have been sold by the Defendants with inaccurate and overstated fuel economy ratings.

Other than the cases referenced herein and a twelfth case, *Thomas, et al. v. Hyundai Motor America, Inc., et al.*, Case No. SACV 12-2008 JVS (RNBx) (C.D. Cal.), which was filed on November 16 but not yet docketed by the Court, Plaintiffs know of no other pending related defect cases. Defendants are best situated to inform the Panel whether there are any other class actions in federal district courts that raise the same or similar claims.

## III. ARGUMENT

### A. Transferring the Pending Actions for Coordinated Pretrial Proceedings is Proper

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts.[16] These goals are best served by transferring the above-identified cases for coordinated pretrial proceedings. 28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action."[17]

Here, Section 1407's requirements for transfer are satisfied. The above-referenced class actions against Defendants are based on the same or substantially similar questions of law and fact. In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. Indeed, because all of the actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into highly

---

[16] *See* MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004).

[17] 28 U.S.C. § 1407(a); *In re Cutter Labs, Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.*, 465 F. Supp. 1295, 1296 (J.P.M.L. 1979).

technical aspects of Defendants' fuel economy testing and sales procedures, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.

**1. The related actions involve common questions of fact.**

The first requirement of Section 1407 – that actions involve common questions of fact – is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by the Defendants and are, therefore, identical for pretrial purposes.[18] Common questions of fact and law at issue in the related actions include, but are not limited to, the following:

a. whether the Defendants assigned each Subject Vehicle, by model and model year, proper and accurate fuel economy ratings based on properly conducted testing;

b. whether the Defendants advertised, marketed, or sold Subject Vehicles using false and overstated fuel economy ratings;

c. whether the Defendants violated federal law with their testing methods or presentation of EPA fuel economy ratings;

d. whether the Defendants willfully concealed errors in fuel economy ratings or recklessly disregarded their falsity;

e. whether a failure to accurately measure and state EPA fuel economy ratings violates state consumer protection laws;

f. whether the Defendants breached their warranties made to Plaintiffs and the class members by misstating the EPA fuel economy ratings;

g. whether the Defendants' conduct harmed Plaintiffs and the class members; and

[18] *See In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004).

h. whether Plaintiffs and the class members are entitled to damages, equitable or injunctive relief, or other relief.

Even a cursory review of the pleadings reveals that the factual issues to be determined in each of the actions are nearly identical, making transfer to a single forum highly appropriate.[19]

**2. Consolidating the actions furthers the convenience of parties and witnesses.**

Consolidation of the related class actions would likewise satisfy the second requirement of Section 1407 because it will serve the convenience of the parties and witnesses. Discovery in all of the related actions will necessarily focus on documents, witnesses and other evidence pertaining to Defendants' testing, development, and marketing of the Subject Vehicles, Defendants' knowledge of problems regarding fuel economy testing procedures and results, and any steps Defendants took to address any known problems. These subjects are complex and highly technical and will require substantial discovery and entail significant expense. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Additionally, Plaintiffs anticipate additional actions will be filed as the owners of more than 900,000 Subject Vehicles learn of the EPA investigation, its findings, and the Defendants' public admission of error and about the terms of its proposed remedy for owners and lessees. Coordination of the actions would enable a single District Judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

---

[19] *See In re Neurontin Mktg & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004) (finding existence of common issues to warrant transfer where "[a]ll actions [were] purported class actions involving allegations that common defendants have engaged in the illegal promotion and sale of the drug Neurontin"); *In re Ephedra Prod. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("Common factual questions arise because these actions focus on alleged side effects of ephedra-containing products, and whether defendants knew of these side effects and either concealed, misrepresented or failed to warn of them.").

**3. Transfer and consolidation will promote just and efficient conduct of the related actions.**

For these same reasons, transfer and coordination of the related cases would also promote the just and efficient adjudication of the actions. The related actions all raise common questions of fact and law. Plaintiffs in each action will likely seek to depose many of the same individuals and request production of a substantially similar set of documents. Failure to consolidate these actions would, therefore, result in unnecessary and duplicative discovery; witnesses would have to appear for multiple depositions and Defendants would have to negotiate and produce multiple sets of overlapping documents. Consolidation and coordination of the actions would avoid this needless waste of resources and confer benefits upon both the Plaintiffs as well as Defendants.[20]

Plaintiffs believe that there are presently eleven related actions, which were all filed in less than three weeks, pending in the federal courts. This Panel places a "heavier burden" on movants where only a small number of cases are sought to be transferred.[21] However, as previously noted, due to the sheer size of the population affected by the defect – at least 900,000 vehicles – Plaintiffs anticipate additional cases will be filed as more people learn the recently announced results of the EPA's investigation. Also, the fact that all eleven actions are seeking to certify overlapping classes, opening the possibility of inconsistent rulings on certification issues, weighs heavily in favor of transfer and consolidation. Lastly, the defects at issue are complex and highly technical and will necessarily require extensive use of experts and duplicative

[20] *See In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002).

[21] *See, e.g.*, *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969).

discovery, as well as needless taxation on the judicial system, the actions should be consolidated before the same court.[22]

**B. The Related Actions Should Be Transferred to the Central District of California for Coordinated or Consolidated Pretrial Proceedings before Honorable Judge Selna or to Judge Guilford**

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."[23] The Panel also favors transferring related actions to the district in which the broader-based and earliest actions were filed.[24] Each of these factors weighs in favor of transferring the related cases to Judge Selna in the Central District of California. The *Hunter* case was filed first and assigned to Judge Selna and under the Central District's General Order No. 98-04, all pending civil cases which fall within the related case transfer criteria will be assigned to the judge to whom the first filed case bearing the lowest case number was assigned.

Two of the eleven actions at issue (*Hunter* and *Wilton*) are already pending before Judge Selna, and *Krauth, Graewingholt* and *Thomson* are pending before Judges Andrew Guilford, Cormac J. Carney and David O. Carter, colleagues of Judge Selna in the same division of the same district. In all, 41 of the 49 plaintiffs who have filed actions thus far have chosen to file in the Central District of California; their preference should not be upset. And while this Panel

---

[22] *See Neurontin*, 342 F. Supp. 2d at 1351; *Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d at 1375; *In re European Rail Pass Antitrust Litig.*, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001) (transferring related actions to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

[23] MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004).

[24] *See In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1974).

usually prefers to transfer actions to the court where a related action is the most procedurally advanced,[25] that factor is not applicable here where all of the related actions are in their infancy, having all been filed in the last couple weeks. No substantive discovery briefing has taken place in any of the actions.

Other important considerations that weigh in favor of transferring the related actions to the Central District of California include the Defendants' location,[26] the locations of relevant documents,[27] and the centrality of the location for the convenience of the parties and the location of witnesses.[28] Here, although there is no singular geographical focal point for this litigation – Defendants sold Subject Vehicles across the nation – the proximity of the Central District of California to Hyundai Motor America's headquarters in Fountain Valley, California and Kia Motors America, Inc.'s headquarters in Irvine, California (the locations where most of the parties' discovery will necessarily focus) weighs heavily in favor of transferring the related cases to Judge Selna. Moreover, the Central District of California and surrounding region are serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys.

---

[25] *See, e.g., In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 598 F. Supp. 2d 1384, 1386 (J.P.M.L. 2009) (selecting district because "the first-filed and most procedurally advanced actions are pending there"); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1358, 1359 (J.P.M.L. 2009); *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 484 F. Supp. 2d 1355, 1356 (J.P.M.L. 2007) ("Panel has selected the Central District of California, because the California action appears to be slightly broader and somewhat more procedurally advanced than the Iowa action.").

[26] *See In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993).

[27] *See In re Air Crash Disaster Near Coolidge, Arizona*, 362 F. Supp. 572, 573 (J.P.M.L. 1973).

[28] *See In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973).

Lastly, Judge Selna has extensive experience handling complex class actions, including a large automotive class action involving false advertising similar to those raised here,[29] and is therefore intimately familiar with, and can efficiently handle, issues that are likely to arise in these related actions.

Alternatively, if the Panel declines to transfer these related actions for coordinated consolidated pre-trial proceedings before Judge Selna, Plaintiffs request the Panel transfer these related actions for coordinated consolidated pre-trial proceedings before Judge Guilford in the Central District of California. Judge Guilford is currently presiding over the *Krauth* action, and has substantial experience handling automotive class actions.[30]

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Panel transfer the above-listed class actions and any subsequently filed class action cases raising similar claims to the Central District of California for coordinated pretrial proceedings before the Honorable James V. Selna.

[29] *See In re Toyota Motor Corp. Unintended Acceleration Mktg.*, Case No. 8:10ML 02151 (C.D. Cal.).

[30] *See Cirulli v. Hyundai Motor America*, Case No. SACV 08-0854 (C.D. Cal.); *Decker v. Mazda Motor of America, Inc.*, Case No. SACV 11-0873 (C.D. Cal.).

Dated: November 19, 2012

Respectfully submitted,

By: /s/ Steve W. Berman
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Phone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson, Suite 1000
Phoenix, AZ 85003
Phone (602) 840-5900
Fax: (602) 840-3012
rob@hbsslaw.com

Attorneys for *Brady* Plaintiffs